IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-270-FL

| | |
|---|---|
| DENISE DALEY-BISHOP and THOMAS BISHOP, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LONG AND FOSTER PROPERTY MANAGEMENT; LONG AND FOSTER REAL ESTATE, INC.; LONG AND FOSTER, INC.; MARTIN DRAMOU; ELISABETH LAMA; and MARTINE DRAMOU, )<br>)<br>Defendants. ) | ORDER |

This matter is before the court upon motion to dismiss for failure to state a claim (DE 45) filed by defendants Long and Foster Property Management; Long and Foster Real Estate, Inc.; and Long and Foster, Inc. (collectively, "defendants" or "Long and Foster").[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R"), wherein it is recommended that defendants' motion be granted in part and denied in part. (DE 51). Defendants filed objections to the M&R, and plaintiffs responded. In this posture, the issues raised are ripe for ruling. For the following reasons,

---

[1] For purposes of the instant order, the term "defendants" refers to all of the above mentioned entities, although defendant Long and Foster asserts in its motion that defendant Long and Foster Property Management is a division of defendant Long and Foster Real Estate, Inc., and that purported defendant Long and Foster, Inc., is not a legal entity. In addition, the term "defendants" as used in this order without qualification does not include individual defendants Martin Dramou, Elisabeth Lama, and Martine Dramou, who are in default, as specified herein.

the court adopts the M&R, and grants in part and denies in part defendants' motion, on the terms set forth herein.

## STATEMENT OF THE CASE

Plaintiffs, who are residents of Maryland who own certain residential property at 104 Ginger Circle, in Selma, North Carolina (the "Property"), commenced this action on May 17, 2019, in Johnston County Superior Court. In their operative second amended complaint (hereinafter, the "complaint"), filed after defendants removed the action to this court, plaintiffs assert claims of breach of contract and breach of fiduciary duty/constructive fraud against defendants, arising out of defendants' conduct as rental property managers for plaintiffs. Plaintiffs also assert claims for breach of contract (lease) and damage to property against individual defendants Martin Dramou, Elisabeth Lama, and Martine Dramou, who were tenants that resided at the Property from approximately 2014 to 2018, and who are now in default (hereinafter, "tenants").[2] Plaintiffs seek damages in excess of $25,000.00, as well as fees, costs, and trial by jury.

Defendants filed the instant motion on October 8, 2019, seeking dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded in opposition on October 18, 2019, and defendants replied on November 1, 2019. M&R entered on June 3, 2020, recommending that the court dismiss plaintiff Thomas Bishop's claims against defendants, but allow the claims by plaintiff Denise Daley-Bishop to proceed against defendants. Defendants filed objections on June 17, 2020, and plaintiffs responded on June 26, 2020.

## STATEMENT OF ALLEGED FACTS

The court incorporates herein the summary of alleged facts, as set forth in the M&R, for ease of reference.

---

[2]     The court entered default against the tenants on December 3, 2019.

2

Plaintiffs own property located at 104 Ginger Circle in Selma, North Carolina (the "Property"). 2d. Am. Compl. [DE-43] ¶ 2. On November 12, 2009, Denise Bishop entered into an "Exclusive Property Management Agreement" (the "Agreement") [DE-43-1] with Clayton Residential Rentals ("CRR") for the provision of property management services for the Property. 2d. Am. Compl. ¶¶ 9, 10.

Pursuant to the terms of the Agreement, in exchange for a percentage of rental income collected, CRR was obligated to, among other duties, "[m]anage the property to the best of Agent's ability, devoting thereto such time and attention as may be necessary." 2d Am. Compl. ¶ 11; Agr. ¶ 5(a). It obligated CRR to,

> [m]ake or cause to be made any repairs which, in Agent's opinion, may be necessary to preserve, maintain and protect the Property, provided, Agent may not make any repairs that exceed $300.00 without prior approval of Owner, except that in the case of an emergency, Agent may, without prior approval, make whatever expenditures on behalf of Owner that are reasonably necessary to preserve the Property or prevent further damage from occurring.

2d Am. Compl. 12; Agr. ¶ 5(g). The Agreement also required CRR to,

> [i]nstitute and prosecute such proceedings in small claims court as may be necessary and advisable, in Agent's opinion, to recover rents and other sums due the Owner from tenants or to evict tenants and regain possession, including the authority, in Agent's discretion, to settle, compromise and release any and all such small claims proceedings.

2d Am. Compl. ¶ 13; Agr. ¶ 5(k).

The Agreement required that Denise Bishop,

> [i]ndemnify and hold Agent harmless to the extent allowable by law from any and all costs, expenses, attorneys' fees, suits, liabilities, damages or claims for damages, including but not limited to, those arising out of any injury or death to any person or loss or damage to any property of any kind whatsoever and to whomsoever belonging, including Owner, in any way relating to the management of the Property by Agent or the performance or exercise of any duty, obligation or authority set forth herein or hereafter granted to Agent, except to the extent that such may be the result of gross negligence or willful or intentional misconduct by Agent.

Agr. ¶ 8(e). CRR and Denise Bishop also executed an Addendum to the Agreement, which provides in relevant part an acknowledgement by Denise Bishop that,

> I understand that in placing my house for rent, that I take some risk in that the tenant may not take the care I would take and although CRR screens its potential tenants, we cannot know how they will take care of your home

3

> except from what we are told from the rental references. I understand that this is my house and my investment, and the upkeep, maintenance and damage repairs are my financial responsibility, should they occur. I will not hold CRR responsible in any way for the actions of a tenant or damage they may cause to my property. CRR will defend me in Small Claims Court for such damages should the need arise.

Agr. Addendum [DE-43-1] at 6. The Addendum obligated CRR to conduct one annual inspection of the property, or additional inspections at Denise Bishop's request at a cost of $50.00 per inspection. 2d Am. Compl. ¶¶ 17-18; Agr. Addendum at 7. Denise Bishop requested that a second additional inspection be done yearly, which was agreed to by CRR. 2d Am. Compl. ¶¶ 19, 20.

On June 16, 2014, CRR accepted the application of the Tenants to rent the Property. *Id.* ¶ 22. At the time the Tenants took possession of the Property, it was in good condition with only minor wear. *Id.* ¶ 24. On January 1, 2015, Long & Foster acquired CRR. *Id.* ¶ 25. The Tenants signed a new lease with Long & Foster for the Property in December of 2016. *Id.* ¶ 26; Lease Agr. [DE 43-2].

Plaintiffs visited the Property in December of 2015 and identified several items requiring remedy by the Tenants. 2d. Am. Compl. ¶ 28. Long & Foster did not conduct an inspection of the property to ensure that the items were remedied, *id.* ¶ 29, nor did it conduct any inspection at all of the Property in all of 2016, *id.* ¶ 31. When Long & Foster inspected the Property in November of 2017, it observed that the Tenants were engaged in the production of African oils, but failed to take any steps to require the Tenants to discontinue the oil production, willfully and intentionally allowing the oil production to persist. *Id.* ¶¶ 32-36. In its December 2017 inspection, Long & Foster observed unauthorized tenants staying at the Property but did not pursue eviction proceedings or collect fines or penalties resulting from the additional tenants. *Id.* ¶¶ 39-40.

At the next inspection in August of 2018, Long & Foster noted several lease violations by the Tenants, including the presence of barrels used for the production of African oils in the driveway. *Id.* ¶ 43. Long & Foster sent the Tenants a letter concerning the lease violations but did not take any other steps to confirm that the oil production ceased or investigate whether damage had been caused to the Property by the oil production. *Id.* ¶¶ 44-46. Plaintiffs allege that Long & Foster intentionally did not take action to correct the lease violations in order to allow it to collect the rental management fees under the Agreement. *Id.* ¶ 47.

The Tenants vacated the Property in December of 2018. The Tenants caused extreme damage to the Property, requiring Plaintiffs to incur over $ 75,000.00 in repair costs. *Id.* ¶ 50.

**COURT'S DISCUSSION**

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

Defendants object to the portion of the M&R recommending that the court allow to proceed the claim for breach of fiduciary duty/constructive fraud brought by plaintiff Denise Daley-Bishop

(hereinafter, "plaintiff") against defendants.[3]  Upon de novo review of that portion of the M&R, the court concludes that the recommendation in the M&R is correct.  The court writes separately to augment the analysis in the M&R in light of the objections raised.

1.      Breach of Fiduciary Duty/Constructive Fraud

"The elements of a claim for breach of fiduciary relationship are the same as those for constructive fraud." King v. Bryant, 369 N.C. 451, 465 n. 3 (2017).  "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Id. at 464.[4]  "If a fiduciary relationship is found to exist, the fiduciary is held to a standard stricter than the morals of the market place[;] not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." Id. at 464-465.  Liability for breach of fiduciary duty/constructive fraud "is based on the taking advantage of a confidential relationship rather than a specific misrepresentation." Id. at 465.  "As a result, where a relation of trust and confidence exists between the parties, there is a duty to disclose all material facts and failure to do so constitutes" a breach of fiduciary duty/constructive fraud. Id.  In addition, to state a claim of breach of fiduciary duty/constructive fraud, "it must be shown that the defendant sought to benefit himself at the expense of the other party." Id.[5]

---

[3]     Defendants do not object to that portion of the M&R recommending that the court allow plaintiff's breach of contract claim to proceed, nor do the parties object to that portion of the M&R recommending that claims by plaintiff Thomas Bishop against defendants should be dismissed.  Upon clear error review, the court adopts the recommendation of the M&R as to those claims.  Because the remainder of the analysis in this order concerns only plaintiff's claims against defendants, all references to "plaintiff" hereinafter, unless otherwise specified, are to plaintiff Denise Daley-Bishop.

[4]     In all quoted text, internal quotation marks and citations, if any, are omitted unless otherwise specified.

[5]     In the foregoing exposition of the law, the court departs from the analysis of the M&R, which relied upon an opinion of the North Carolina Court of Appeals for the proposition that "[t]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." M&R (DE 51) at 15 (quoting White v. Consol. Planning, Inc., 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004)).  As the citation above in the text to the North Carolina Supreme Court makes clear, a claim for both breach of fiduciary duty and constructive fraud requires a showing that defendant sought to benefit

6

Defendants argue that plaintiff fails to adequately plead a fiduciary relationship between the parties. "A fiduciary relationship has been broadly defined by [the North Carolina Supreme] Court as one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Sykes v. Health Network Sols., Inc., 372 N.C. 326, 340 (2019). "The very nature of some relationships, such as the one between a trustee and the trust beneficiary, gives rise to a fiduciary relationship as a matter of law." Id. "The list of relationships that we have held to be fiduciary in their very nature is a limited one, and we do not add to it lightly." Id. A fiduciary relationship as a matter of law includes "legal relations, such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, [and] trustee and cestui que trust." Abbitt v. Gregory, 160 S.E. 896, 906 (N.C. 1931).

By contrast, "[i]t is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other." King, 369 N.C. at 464; see Abbitt, 160 S.E. at 906 (N.C. 1931) (noting fiduciary relationship existing in fact, based upon "confidence reposed on one side, resulting domination and influence on the other"). "The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal." King, 369 N.C. at 464. "[T]he relation may exist under a variety of circumstances," dependent upon the facts of each case. Id. "Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded." Id.

---

himself at the expense of the other party. On the proposition quoted in the M&R, it appears White has been abrogated by King.

Courts applying North Carolina law recognize that "general contractual relationships do not typically rise to the level of fiduciary relationships." Sykes, 372 N.C. at 340. "[P]arties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract." Id. For example, "[a]s a matter of law, there can be no fiduciary relationship between parties in equal bargaining positions dealing at arm's length, even though they are mutually interdependent businesses." Dreamstreet Investments, Inc. v. MidCountry Bank, 842 F.3d 825, 831 (4th Cir. 2016). However, a fiduciary relationship may arise in circumstances beyond a mere "business relationship" with a "commercial contract." Id. at 832. For example, there may be "an issue of fact as to fiduciary relationship where plaintiffs had long-term and regular dealings with defendant with special legal skills and real estate expertise." Id. (citing Bumgarner v. Tomblin, 306 S.E.2d 178, 183 (N.C. App. 1983)).

Based on the foregoing principles, plaintiff has alleged sufficient facts to give rise to a plausible inference of a fiduciary relationship in fact between the plaintiff and defendants.[6] While not every commercial contractual relationship gives rise to a fiduciary relationship, plaintiff has alleged special circumstances in which she placed confidence in defendants to "[m]anage the Property to the best of Agent's ability, devoting thereto such time and attention as may be necessary," through the terms of the Agreement. (Agr. (DE 43-1) at 1). As part of the Agreement, defendants maintained considerable discretion to act on behalf of plaintiff and her property, including making repairs, answering tenant requests, performing "the duties impose upon Owner," instituting proceedings in small claims court "as may be necessary and advisable" against tenants, and performing regular inspections. (Agr. (DE 43-1) at 2, 7). In this respect, plaintiff entrusted

---

[6] The court departs from the analysis of the M&R in that the court does not resolve determinatively at this juncture whether plaintiff has alleged a fiduciary relationship as a matter of law between a property owner and a property manager.

her property to defendants, expressly placing reliance on their experience and expertise "as a real estate professional." (Id. at 5; see 2nd Am. Compl. ¶¶ 58-60, 62).

In addition, the relationship between the parties is defined not only by the Agreement, but also the tenant leases, and the alleged events taking place over the terms of the leases. (Id. ¶¶ 29-50, 61-63; see, e.g., Residential Rental Contract (DE 43-2) at 1 (listing defendants as "Real Estate Management Firm" and "Agent"); 2 (allowing tenants to change door locks with defendants' permission)). Moreover, while defendants' status as a real estate broker does not necessarily create a fiduciary relationship as a matter of law, it is an important factor in looking at relationship as matter of fact. (Id. ¶¶ 27, 59). Unlike a mere commercial or transactional relationship, the relationship in this case is characterized by an entrustment of property in the hands of another who allegedly became privy, over time, to information critical and important to the welfare of property, which plaintiff as absentee property owner did not know. (Id. ¶¶ 29-50).

In sum, defendants' substantial real estate experience and expertise, contrasted with plaintiff's status as an absentee owner of a residential property, creates an imbalance of superiority and influence that is sufficient, under the totality of the alleged circumstances of this case, to give rise to an inference of a fiduciary relationship in fact. Accordingly, where plaintiff also alleges sufficient facts to establish a breach of such fiduciary relationship, to the benefit of defendants, (id. ¶¶ 44-47, 61-63), plaintiff has stated a claim for breach of fiduciary duty/constructive fraud.

2. Pleading Fraud With Particularity

Defendants argue that plaintiff fails to meet the pleading standards required by Federal Rule of Civil Procedure 9(b). However, "[t]he very nature of constructive fraud defies specific and concise allegations," "because it is based on a confidential relationship rather than a specific misrepresentation." Terry v. Terry, 302 N.C. 77, 85 (1981). Accordingly, the Rule 9(b)

9

"particularity requirement may be met by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) (which) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Id.

Here, the court already has set forth above in the preceding section the alleged facts and circumstances which created the relation of trust and confidence, and which surrounded the consummation of the transactions in which defendants are alleged to have taken advantage of their position to the hurt of plaintiff. Defendants suggest that the "transaction" at issue in this case is merely the execution of the Agreement between plaintiff and defendants. (Obj. (DE 52) at 7). But, based on the allegations in the complaint, the actionable transactions by which plaintiff was injured include continuing collection of management fees under the Agreement, and the continuing renewal of tenant leases, during the course of damaging acts by tenants towards the Property over the entire term of the Agreement and the tenant leases. (See, e.g., 2nd Am. Compl. ¶¶ 25-50). Plaintiff has alleged these circumstances sufficiently to meet the requirements of Rule 9(b) for a claim of breach of fiduciary duty/constructive fraud.

3. Economic Loss Rule

Defendants argue that plaintiff's breach of fiduciary duty/constructive fraud claim is barred by the economic loss rule.

"North Carolina's economic loss rule provides that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018). "A tort action must be grounded on a violation of a duty imposed by operation of law, not a violation of a duty arising purely from the contractual relationship of the parties." Id. "Accordingly, North Carolina law requires courts to limit

10

Case 5:19-cv-00270-FL   Document 54   Filed 07/20/20   Page 10 of 12

plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." Id.

Here, plaintiff's breach of fiduciary duty/constructive fraud claim is not barred by the economic loss rule, because the claim by definition is grounded in the violation of a fiduciary duty and not a duty arising purely from the contractual relationship of the parties. While the Agreement between the parties is a factor in determining whether a fiduciary duty existed in this case, as set forth above in section B.1., the fiduciary duty is separate and distinct from the mere terms of the Agreement. It is a duty defined by the totality of the circumstances of the relationship between plaintiff and defendants, over an extended period of time, including through the relationship between the parties and the tenants, and the activities of the tenants at the Property.[7]

Fourth Circuit and North Carolina Supreme Court case law does not address whether a properly pleaded breach of fiduciary duty/constructive fraud claim categorically must be dismissed under the economic loss rule, where a plaintiff also pleads a claim for breach of contract. Nevertheless, it is notable that the Fourth Circuit, in Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998), separately analyzed a plaintiff's breach of fiduciary duty claims, apart from its analysis of whether the plaintiff's tort claims were subject to the economic loss rule. See id. at 346-349. In addition, in Dreamstreet Investments, Inc., the Fourth Circuit suggested that, while "parties to a contract . . . generally do not become each other's fiduciaries," a different result may arise if plaintiffs allege more than an "ordinary contractual relationship." 842 F.3d at

---

[7] In this respect, the court departs from the analysis of the M&R, which concludes that plaintiff's "allegations that address conduct outside of the contract breach are not substantial," and which relies solely on allegations that defendants "intentionally neglected its contractual obligations." (M&R (DE 51) at 18). Per the analysis in the text above, the key to avoiding the economic rule in this case is that the duty arising from operation of the fiduciary duty claim is separate from the duties arising solely from the Agreement between the parties, not that there has been an intentional breach of the Agreement. Indeed, an intentional breach of contract, without more, "does no more than state a standard breach of contract claim." Edmondson v. Am. Motorcycle Ass'n, Inc., 7 F. App'x 136, 149 (4th Cir. 2001).

11

831–32; see also S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese, 284 F.3d 518, 534 (4th Cir. 2002) (allowing a breach of fiduciary duty claim to proceed, even though the parties also entered into an agreement setting forth the parties' respective responsibilities).

In sum, where plaintiff sufficiently has pleaded a claim for breach of fiduciary duty/constructive fraud, on grounds distinct from duties arising solely from the parties' Agreement, dismissal is not required under the economic loss rule.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation in the M&R, (DE 51), albeit in part on different reasoning as set forth herein. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. In particular, claims by plaintiff Thomas Bishop against defendants, as defined herein, are DISMISSED WITHOUT PREJUDICE. Plaintiff Denise Daley-Bishop's claims for breach of contract and breach of fiduciary/constructive fraud against defendants are allowed to proceed.[8]

SO ORDERED, this the 20th day of July, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[8] As noted herein, defendants Martin Dramou, Elisabeth Lama, and Martine Dramou have defaulted on plaintiffs' claims against them.